IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JOSEPH M. McCARTY,            )
                             )
                Plaintiff,    )
                             )
vs.                          )        Case No. 07-4041-SAC
                             )
MICHAEL J. ASTRUE,           )
Commissioner of              )
Social Security,             )
                             )
                Defendant.    )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On March 31, 2006, administrative law judge (ALJ) Jack D.
McCarthy issued his decision (R. at 24-33).  Plaintiff alleged
that his disability began on February 15, 2002 (R. at 25, 532-
33).  Plaintiff meets the insured status requirement for
disability insurance through June 30, 2008 (R. at 25).  At step

4

one, the ALJ found that plaintiff had not engaged in substantial

gainful activity since February 15, 2002 (R. at 26-27).  At step

two, the ALJ determined that plaintiff had the following severe

impairments: arthritis and diabetes mellitus (R. at 27).  At step

three, the ALJ determined that plaintiff's impairments do not

meet or equal a listed impairment (R. at 27).  After establishing

plaintiff's RFC, the ALJ found at step four that plaintiff is

capable of performing past relevant work as a light production

worker, a custodian and an auto salesperson (R. at 32).

Therefore, the ALJ concluded that plaintiff was not disabled.

**III.  Did the ALJ err by failing to provide the medical expert,
who testified at the hearing, with all the available medical
records?**

    In his decision, the ALJ noted the testimony of Dr. Rosch,

stating the following:

> At the October 2005 hearing, testimony was
> received from Laura M. Rosch, D.O., M.S.,
> F.A.C.O.I, an impartial and independent
> medical expert (Ex. 12B). Dr. Rosch reviewed
> the medical evidence. Especially citing the
> 2004 and 2005 examinations/evaluations noted
> above, she suggested that the objective
> medical record neither supported the level of
> disability alleged by the claimant nor
> reflected the level of treatment that one
> would expect if the claimant's testimony was
> fully credible. Dr. Rosch noted that many of
> the claimant's alleged conditions are
> controlled with medication/treatment.
>
> While the evidence, both objective and
> subjective, might suggest that the claimant

does experience some aches, pains, fatigue,
etc., it does not support the level of
disability alleged. His testimony is
exaggerated as to both the frequency and
severity of symptoms. The claimant's
testimony lacks credibility as to the
limitations on standing, walking, sitting,
lifting, carrying, and concentrating.

Accordingly, the undersigned finds the
claimant retains the residual functional
capacity for medium exertional work but he
needs to avoid concentrated exposure to cold
temperatures.

(R. at 31). Thus, the record clearly demonstrates that the ALJ

relied on the testimony of Dr. Rosch to find that plaintiff was

not fully credible and that his allegations of disability are not

supported by the record.

At the hearing, Dr. Rosch stated that: "Most recent evidence

I have, however, unfortunately, is only from April of 2004.  I

don't have any more recent exams or notes for this Claimant" (R.

at 556).[1]  Exhibit 7F (R. at 442-492), containing medical records

on the claimant from August 1, 2004 through September 7, 2005,

was not provided to Dr. Rosch (R. at 561).  Dr. Rosch testified

that the most recent medical exam or comprehensive exam he had

from the plaintiff was from April 2004 (R. at 561).  The ALJ

conceded that, although the medical records in Exhibit 7F were

received in his office on the 15th or 16th of September (R. at

_____

[1]The records that were provided to Dr. Rosch included
Exhibit 6F (R. at 561), which were medical records through July
29, 2004 (R. at 353-441).  Dr. Rosch referenced some of those
records from July 2004 during his testimony (R. at 560).

442), and the hearing was not until the 4th of October, he could
not understand why they were not copied and sent to Dr. Rosch (R.
at 582, 579).  The ALJ further indicated that someone in the
support staff failed to mail these medical records to Dr. Rosch
and that this was not the first instance that he had seen this
happen (R. at 581).  The ALJ noted that he had no supervisory
authority over the support staff (R. at 581).

Thus, Dr. Rosch stated that he was not aware that the VA had
issued plaintiff a cane in 2005, and he did not know about the
MRI done in August 2005.  When asked if he would like to see
that, Dr. Rosch responded: "In order to fully evaluate Claimant
based on current evidence, that would be useful" (R. at 563).

In the recent case of <u>Madrid v. Barnhart</u>, 447 F.3d 788, 790
(10th Cir. 2006), the court set forth the applicable law
regarding the ALJ's duty to develop the record regarding medical
evidence:

> "It is beyond dispute that the burden to
> prove disability in a social security case is
> on the claimant." <u>Hawkins v. Chater</u>, 113 F.3d
> 1162, 1164 (10th Cir.1997); 20 C.F.R. §
> 404.1512(a) ( "[Y]ou must bring to our
> attention everything that shows that you are
> ··· disabled."). Nevertheless, because a
> social security disability hearing is a
> nonadversarial proceeding, the ALJ is
> "responsible in every case 'to ensure that an
> adequate record is developed during the
> disability hearing consistent with the issues
> raised.' " <u>Hawkins</u>, 113 F.3d at 1164 (quoting
> <u>Henrie v. United States Dep't of Health &
> Human Servs.</u>, 13 F.3d 359, 360-61 (10th
> Cir.1993)); 20 C.F.R. § 404.944 (requiring

the ALJ to "look[ ] fully into the issues").

In his decision, the ALJ noted that plaintiff's counsel had objected because not all of the medical records were sent to Dr. Rosch prior to the October 2005 hearing.  The ALJ overruled the objection, stating that:  "the evidence in question is consistent with the evidence that had been sent to the medical expert.  They are not difficult to interpret.  There is no reason to expend the resources of the Administration or further delay reaching a decision in this case to obtain another opinion from Dr. Rosch" (R. at 25, n.2).

In the case of Williams v. Massanari, 171 F. Supp.2d 829, 833 (N.D. Ill. 2001), the medical expert (ME) at the hearing qualified his testimony due to missing medical records and evidence from the claimant's primary treating physician during the period of alleged disability.  The ALJ noted this and said, "ideally it would be good to have them now for you to evaluate." Id.  The ALJ proceeded with the hearing and allowed the ME to testify based upon the available, albeit limited, records.  After the ALJ's receipt and review of the new records, the ALJ did not forward the records to the ME to solicit his further opinions. The ALJ claimed it was unnecessary to forward the records because he was able to assess the evidence to form his own conclusions regarding the claimant's functional abilities.

The court in Williams found that the ALJ erred by not

8

forwarding the additional medical evidence to the ME.  The court
stated that because of the non-adversarial nature of a SSA
proceeding, the ALJ is responsible for developing a full and fair
record.  The ALJ relied on the treating physician and the ME in
determining plaintiff's RFC.  For this reason, the court
determined that the ALJ incorrectly and unfairly relied on an
incomplete ME opinion.  Therefore, the court held that the ALJ's
RFC determination at step four was not supported by substantial
evidence.  Id. at 833.

     In Williams, the medical records that were not provided to
the ME (from plaintiff's treating physician) were approximately
50 pages, and included x-ray and blood reports, and spanned a
time period from 1997-1998.  The court stated that these facts
illustrate the notion that their omission would create a gaping
hole in the testimony of the ME and consequently the VE
(vocational expert).  Furthermore, the court held that the ALJ's
sole examination and interpretation of such crucial records in an
attempt to fill this hole crossed the line between judge and
medical doctor.  Id. at 834.

     The court noted that although it is not always necessary for
an ALJ to call an ME to evaluate medical evidence, this ALJ did
so, creating a presumption an ME was necessary.  The court stated
that when the ALJ interpreted the medical records without
providing them to the ME, he was required to justify such an

action and sufficiently articulate his assessment of the evidence to assure the court that the ALJ considered the important evidence and to enable the court to trace the path of the ALJ's reasoning.  The court concluded that the ALJ's reasoning was insufficient and held he should have stood by his word and referred the medical records to the ME.  Id. at 834.

In the case before the court (McCarty), the ALJ stated that Dr. Rosch had cited the 2004 and 2005 examinations/evaluations (R. at 31).  The ALJ had previously mentioned a Social Security evaluation on February 7, 2004 (Ex. 4F), and a Veterans Compensation and Pension examination on May 31, 2005 (Ex. 7F) (R. at 29).  However, Dr. Rosch did not cite to any examination from 2005 because those records, contained in Exhibit 7F, were not provided to him (R. at 556, 561).  Thus, the ALJ clearly erred by stating that Dr. Rosch's opinions were based on medical records, including examinations or evaluations, from 2005.

The ALJ stated that the medical records in Exhibit 7F were "consistent" with the evidence sent to the ME, and are not difficult to interpret (R. at 25, n.2).  Included in these medical records from 2005 was an MRI of the lumbar spine done on August 1, 2005.  The MRI report indicates that plaintiff has mild disc desiccation and narrowing of disc space identified at L2-L3 and L5-S1 level.  Otherwise, vertebral body heights, alignment, disc spaces and bone marrow signal were normal.  There was no

evidence of focal disc herniation, nerve root impingement, or spinal canal stenosis.  There was mild concentric disc bulge identified at L3-L4, L4-L5 and L5-S1 level.  There is mild bilateral hypertrophic facet disease seen at the same level.  The overall impression was mild concentric disc bulge at L3-L4, L4-L5and L5-S1 level; otherwise, no evidence of focal disc herniation, nerve root impingement or spinal canal stenosis (R. at 452).

The ALJ did not cite to any other lumbar spine MRIs performed on the plaintiff other than this one in 2005, and other medical findings previously referenced by the ALJ in his summary of the medical evidence do not note many of the findings contained in the August 2005 MRI report (R. at 28). Specifically, no other medical records identified by the ALJ indicated mild disc desiccation, and mild concentric disc bulge at the L3-L4, L4-L5 and L5-S1 levels, or mild bilateral hypertrophic facet disease at the same levels.[2]  Thus, some of the medical findings from 2005 do not appear to be entirely consistent with the evidence that had been sent to the ME.  When Dr. Rosch was asked if he would like to see the MRI done in

---

[2]A lumbar spine x-ray from February 2004 indicated a minimal levoscoliotic curve, a diffuse intervertebral osteochondrosis, ranging from minimal to moderate, disc space narrowing and end plate spurring being greatest at L2-3 and L5-S1, lower lumbar facetal arthrosis, minimally narrowed sacroiliac joints, and a slight marginal sclerosis but no erosive change (R. at 342, 344).

August 2005, Dr. Rosch responded: "In order to fully evaluate
Claimant based on current evidence, that would be useful" (R. at
563).  Dr. Rosch had previously noted that "unfortunately," the
most recent medical evidence he had was from 2004 (R. at 556).

Furthermore, the medical record indicates that on July 5,
2005 plaintiff was issued a wooden cane, noting that he is
independent with the cane on level surfaces and stairs, and
assessing plaintiff with right L5 radiculopathy due to herniated
nucleus pulposus.  It was noted that plaintiff had a mildly
stooped posture, a mildly slow gait, and that he preferred to
walk with a cane (R. at 457).  The ALJ's summary of the medical
records predating 2005 did not mention the issuance of a cane nor
the assessment contained in this medical record from 2005 (R. at
28).

Given the ALJ's reliance on the testimony of Dr. Rosch, the
ALJ's assertion that Dr. Rosch had before him examinations or
evaluations from 2005 is clearly erroneous.  Furthermore, the
medical records show findings and assessments in 2005 that do not
appear in the earlier medical records provided to the ME; thus,
the medical records from 2005 are not entirely consistent with
the medical records provided to the ME.  Dr. Rosch indicated it
was unfortunate that he did not have medical records after 2004,
and testified that it would have been useful to have the lumber
spine MRI performed in 2005 in order to fully evaluate the

12

plaintiff.  Thus, although the ALJ provided reasons for not submitting the more recent medical records to the ME, the court finds, as in <u>Williams v. Massanari</u>, 171 F. Supp.2d at 833-834, that the reasons are insufficient, and therefore he should have referred the records to the ME.  As in <u>Williams</u>, the failure to provide the more recent medical records to the ME, and the ALJ's sole examination and interpretation of such crucial records in an attempt to fill this hole crosses the line between judge and medical doctor.  The ALJ overstepped his bounds into the province of medicine by finding that the 2005 medical records (which were not provided to the ME) were consistent with the medical records provided to the ME in light of the fact that the 2005 medical records included findings that were not in the medical records provided to the ME.  <u>See</u> <u>Miller v. Chater</u>, 99 F.3d 972, 977 (10th Cir. 1996).  As the court held in <u>Williams</u>, 171 F. Supp.2d at 833-834, the ALJ in this case incorrectly and unfairly relied on an incomplete ME opinion, which impacted his credibility findings, his RFC findings, and his findings at steps four and five.  Therefore, the court finds that the decision of the ALJ is not supported by substantial evidence, and the case should therefore be remanded for further hearing.  On remand, the ALJ shall make new credibility findings, new RFC findings and new findings at steps four and five after the ALJ has made sure that all the medical evidence has been fully and properly analyzed and

considered.[3]

## IV. Did the ALJ err by failing to order a consultative psychological examination?

At the hearing, plaintiff's attorney requested a consultative psychological examination because of a diagnosis of PTSD (post-traumatic stress disorder) and anxiety in the file (R. at 583).  In his decision, the ALJ indicated that he denied the request for such an examination, stating that "no treating or examining source has suggested PTSD" (R. at 25 n.2).  However, the Veterans Administration medical records from February 15, 2005 state that: "The screen for PTSD was positive" (R. at 477). The ALJ clearly erred by failing to mention this finding contained in plaintiff's medical treatment records.

However, the next question is whether a diagnosis of PTSD would warrant a consultative psychological examination.  The Commissioner has broad latitude in ordering consultative examinations.  Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution

---

[3]On remand, the court is not requiring that the ALJ use a ME, although if one is used, the ME must be provided with all the medical records.  However, the ALJ might use other options, such as ordering further consultative examination(s) or by recontacting treating medical sources and obtaining additional information from them.

14

of a disability claim.  There must be present some objective
evidence in the record suggesting the existence of a condition
which could have a material impact on the disability decision
requiring further investigation.  The claimant has the burden to
make sure there is, in the record, evidence sufficient to suggest
a reasonable possibility that a severe impairment exists.  When
the claimant has satisfied this burden in that regard, it then
becomes the responsibility of the ALJ to order a consultative
examination if such an examination is necessary or helpful to
resolve the issue of impairment.  In a counseled case, the ALJ
may ordinarily require counsel to identify the issue or issues
requiring further development.  In the absence of such a request
by counsel, the court will not impose a duty on the ALJ to order
a consultative examination unless the need for one is clearly
established in the record.  Hawkins v. Chater, 113 F.3d 1162,
1166-1168 (10th Cir. 1997).

Because the ALJ refused to order a consultative
psychological examination based on his erroneous belief that no
treating or examining source had suggested PTSD, the issue of
whether a consultative examination is warranted will need to be
addressed when this case is remanded in light of the medical
evidence showing a positive screen for PTSD.  On remand, the ALJ
shall review 20 C.F.R. § 404.1519a, including subsection
(b)(Situations requiring a consultative examination), determine

15

what additional medical evidence may be needed, and determine whether such additional evidence may be obtained from plaintiff's medical sources (20 C.F.R. § 404.1512), or whether a consultative examination would be warranted.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on February 19, 2008.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge